UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WALTER ALEX CERDAN GUERRERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00428-MPB-MKK |
| | ) | |
| BRISON SWEARINGEN, | ) | |
| FIELD OFFICE DIRECTOR, | ) | |
| DAVID J. VENTURELLA, | ) | |
| MARKWAYNE MULLIN, | ) | |
| TODD BLANCHE, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

Walter Cerdan Guerrero, a noncitizen from Peru, is subject to a final order of removal and

is being detained pending his removal from the United States. He has been granted withholding of

removal to Peru based on a fear of torture or persecution, so the Department of Homeland Security

("DHS") cannot presently remove him to Peru. They can, however, remove him to a third country.

After the removal order became final, U.S. Immigration and Customs Enforcement arrested

Mr. Cerdan Guerrero on June 2, 2026, pending attempts to remove him to a third country. He is

currently detained at the Clay County Jail in Brazil, Indiana. Mr. Cerdan Guerrero filed a petition

for a writ of habeas corpus seeking release from detention.

For the reasons discussed, the petition is **conditionally granted**.

## I.    Background

Mr. Cerdan Guerrero is native of Peru. Dkt. 1-1. He came to the United States in August

2022 and was encountered by Border Patrol agents in Arizona. Dkt. 1-1 at 3. He was arrested and

briefly detained before being released into the United States on an order of release on recognizance.

*Id.* at 3, 10. He was released on August 26, 2022, and, at that time, was served with a Notice to Appear for removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* at 7.

Mr. Cerdan Guerrero's removal proceedings concluded with a written order dated February 20, 2025. In the order, Mr. Cerdan Guerrero was found to be inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and ordered removed to Peru. Dkt. 1-1 at 19. However, his application for withholding of removal to Peru under 8 U.S.C. § 1231(b)(3) was granted. *Id.* Neither party appealed the order to the Board of Immigration Appeals. *Id.* at 22; dkt. 8 at 1. As the order stands, Mr. Cerdan Guerrero cannot be removed to Peru. *Id.*

On June 2, 2026, Mr. Cerdan Guerrero was arrested by ICE officers in Indianapolis. Dkt. 8-1 at 10-11. He was arrested pursuant to an administrative warrant (I-200, Warrant for Arrest of Alien) and taken to the Clay County Jail in Brazil, Indiana. *Id.* at 16-17. On the date of his arrest, an ICE official issued a memo cancelling Mr. Cerdan Guerrero's order of release on recognizance. *Id.* at 15. To date, he remains in detention pending his removal from the country. Dkt. 1.

## II.    Discussion

"The Immigration and Nationality Act (INA) establishes procedures for removing aliens living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). Generally, if DHS[1] "discovers that an alien is living in the United States without authorization, it may initiate removal proceedings . . . before an immigration judge to determine whether he is inadmissible or deportable . . . ." *Guzman Chavez*, 594 U.S. at 527 (citing 8 U.S.C. §§ 1229(a), 1229a(a)(1)). The noncitizen will ordinarily be provided with a hearing at some point during removal proceedings, where he has certain procedural rights. *See id.*; *see also* 8 U.S.C.

---

[1] As the Supreme Court mentioned in *Guzman Chavez*, "[a]lthough many of the provisions . . . refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act." 594 U.S. at 527 n.1 (citing *Nielsen v. Preap*, 586 U.S. 392, 397 n. 2 (2019)).

§ 1229a(b)(4). At the conclusion of proceeding, the immigration judge determines whether the noncitizen is inadmissible or deportable and thus removable. 8 U.S.C. §§ 1229a(a)(1), (c)(1)(A). If so, the immigration judge will then determine what country the noncitizen is removable to and then issue a final order of removal. *Id.* at §§ 1229a(c)(5), 1231(b).

However, "during the course of removal proceedings," a noncitizen may also "apply[] for withholding of removal" under either § 1231(b)(3)(A) or the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113 ("Convention Against Torture" or "CAT"). *Id.* at 531 (alteration supplied); 8 U.S.C. § 1229a(c)(4). If successful and granted withholding of removal, "DHS may not remove the alien to the country designated in the removal order unless the order of withholding is terminated." *Guzman Chavez*, 594 U.S. at 531 (citing 8 C.F.R. §§ 208.22, 1208.22). Withholding of removal relief is "country specific," so "nothing prevents DHS 'from removing [the] alien to a third country other than the country to which removal has been withheld or deferred[.]'" *Id.* (alterations supplied) (first citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428, n. 6 (1987) then citing 8 C.F.R. §§ 208.16(f), 1208.16(f)).

Once ordered removed, § 1231 governs both the procedures for removal and a noncitizen's detention pending removal. The statute establishes that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," which is defined as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the removal period, which begins on the latest of:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

3

*Id.* at §§ 1231(a)(1)(B), (a)(2)(A). If a noncitizen "does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision." *Id.* at § 1231(a)(3).

There are at least three circumstances that permit DHS to detain a noncitizen after the removal period. The first allows DHS to *extend* the removal period "if the alien fails or refuses to make timely application" for necessary travel documents for his departure or "conspires or acts to prevent [his] removal." *Id.* at § 1231(a)(1)(C). The second permits DHS to *stay* removal when it is determined that immediate removal is not practicable or proper, or the noncitizen is needed to testify in the prosecution of a person. *Id.* at § 1231(c)(2)(A). And finally, the statute permits detention "beyond the removal period" for those either inadmissible under § 1182 or removable under certain subsections of § 1227, or have been determined by DHS to be a risk to the community or unlikely to comply with an order of removal. *Id.* at § 1231(a)(6). "Continued detention under this [last] provision creates the 'post-removal-period.'" *Guzman Chavez*, 594 U.S. at 529 (alteration supplied); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Because § 1231(a)(6) does not authorize indefinite detention, a noncitizen subject to a removal order may be detained under that section only for "a period reasonably necessary to bring about [his] removal from the United States." *Zadvydas*, 533 U.S. at 689-99 (alteration supplied). A period reasonably necessary to bring about a noncitizen's removal is presumptively six months. *See id.* at 701. After this, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.*, the government must either rebut that showing or release the noncitizen to supervision. *See id.*; *Guzman Chavez*, 594 U.S. at 529 (citing 8 C.F.R. § 241.13).

Mr. Cerdan Guerrero contends that (1) he cannot be detained at all because the removal and post-removal period expired prior to his detention; (2) his detention is no longer authorized

under § 1231 because it is contrary to the statute as interpreted by the Supreme Court in *Zadvydas*; and (3) he is detained in violation of 8 C.F.R. § 241.4 because the substantive factors for supervised release under the regulation were not considered. Each are addressed in turn.

### A. Removal and Post-Removal Period

Mr. Cerdan Guerrero first claims that he cannot be detained at all because the "statutory removal period and six-month presumptively reasonable period for continued removal efforts have passed." Dkt. 1 at ¶ 47. In support, Mr. Cerdan Guerrero points to *Hussain v. Mukasey* and argues that the Seventh Circuit "interpreted *Zadvydas's* six-month period of presumptively reasonable detention as beginning at the same time as the 90-day removal period." Dkt. 1 at ¶ 33 (citing 510 F.3d 739, 742 (7th Cir. 2007)). This argument is unsupported by even the most generous reading of *Hussain* or *Zadvydas*.

*Hussain* involved a due process challenge to prolonged detention under § 1226(c), which DHS invoked to detain the petitioner pending his removal proceedings. *See* 510 F.3d at 742; *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wis. 2007) ("Thus, in the present posture of the case, the Court cannot say that [the petitioner's] mandatory detention under 8 U.S.C. § 1226(c) violates due process."), *aff'd sub nom. Hussain*, 510 F.3d 739. As was discussed above, removal proceedings take place prior to a final order of removal and detention under § 1231(a).

While the *Hussain* court briefly discussed *Zadvydas* and § 1231(a), it did so only to point out that the petitioner was not yet detained under that authority, as well as to distinguish between detention under § 1231(a) and § 1226(c). *See* 510 F.3d at 742-43 (finding the difference between the two statutory provisions "is that an alien who is ordered removed could languish in detention for the rest of his life if no country could be persuaded to accept him, whereas judicial review of removal orders takes only a limited amount of time . . .").

The Court disagrees with the notion that *Hussain* establishes that § 1231(a)(2)'s removal period and *Zadvydas*'s six-month period of presumptive reasonableness commence at the same time. A fair reading of the *Hussain* court's discussion of *Zadvydas* and § 1231 is the court's reiteration that the petitioner's detention under § 1226(c) did not pose the same risk for indefinite detention under § 1231(a)(6).

Nor does *Zadvydas* establish that the two periods begin at the same time. The Supreme Court consistently referenced "post-removal-period detention" under § 1231(a)(6), which it differentiated from the removal period and mandatory detention under 1231(a)(2). *See, e.g.,* 533 U.S. at 697 (discussing the broad class of noncitizens that § 1231(a)(6) could apply to and that "post-removal-period detention, *unlike detention pending a determination of removability or during the subsequent 90–day removal period*, has no obvious termination point." (emphasis supplied)). The Court found that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. The Court then went on to recognize the practical necessity of a presumptively reasonable period for the government to carry out a removal order, during which the government could continue to detain the noncitizen. *Id.* at 700, 701. The Court limited this presumptively reasonable period to six months based on a recent amendment to the INA, which gave the Court "reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months." *Id.* at 701.

Nowhere in *Zadvydas* does it establish the presumptively reasonable period as beginning the moment the removal period commences. Rather, as highlighted above, *Zadvydas* primarily establishes an endpoint for a presumptively reasonable period of detention when it is continued under § 1231(a)(6). It is undisputed that Mr. Cerdan Guerrero was not taken into custody by ICE

until June 2, 2026. *See* dkt. at ¶ 50; dkt. 8 at 2. While this may be after the statutory *removal period*, this is within the confines of § 1231(a)(6) because this section plainly permits detention beyond the removal period. As Mr. Cerdan Guerrero has been detained for a just over 60 days, his detention has not exceeded the presumptively reasonable period established in *Zadvydas*.

**B. Section 1231**

Mr. Cerdan Guerrero next claims his detention is unlawful under § 1231. He argues that the Supreme Court in *Zadvydas* "did not conclude that every detention lasting fewer than six months is constitutionally reasonable" under the Due Process Clause but, rather, "established a rebuttable presumption that detention" remains reasonable during the six-month period. Dkt. 10 at 16. He further argues that *Zadvydas* "emphasiz[ed] that detention under § 1231(a)(6) remains constitutionally permissible only because it serves the limited purpose of effectuating removal." *Id.* He concludes that his detention is impermissible because it does not serve that purpose. *Id.*; *see also* dkt. 1 at ¶ 30-34.

But "federal courts are split on whether an intact presumption is fatal to a petitioner's claim or whether a petitioner is entitled to an opportunity to rebut the presumption." *Jeylani v. English*, No. 3:26-CV-519-CCB-SJF, 2026 WL 1425048, at *2 (N.D. Ind. May 21, 2026). For those courts finding the presumption rebuttable, the consequences of an intact presumption have been explained as follows:

> [T]he scheme operates merely to shift and alter the burden of proving whether or not detention pursuant to § 1231(a)(6) is permissible. Within the six-month window, the detainee must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the government must then disprove. And as time passes, the burden on the government increases accordingly. Thus, the presumption scheme merely suggests that the burden the detainee must carry within the first six months of postorder detention is a heavier one than after six months has elapsed.

*Id.* at \*2 (quoting *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008)).

The Court finds it unnecessary to decide whether the *Zadvydas* presumption is rebuttable because Mr. Cerdan Guerrero falls short even if it were. The crux of Mr. Cerdan Guerrero's claim rests on the notion that he cannot be removed to Peru based on his withholding of removal, and that he is unaware of any arrangements made for his removal to a third country. Dkt. 1 at ¶ 50. He also takes issue with the fact that his detention did not come until approximately 14 months after his removal order became final, which was long after the 90-day removal period. Dkt. 10 at 16-17.

None of this, however, is sufficient to rebut the presumption such that his detention is unreasonable. That he hasn't been made aware of arrangements for his removal does not conclusively establish that there is no prospect of his removal within the reasonably foreseeable future. *See, e.g., Jeylani*, 2026 WL 1425048 at \*2-3 (finding the petitioner's claim, that government had not identified any third countries, had no formal requests, and had not yet procured travel documents after five months of detention, was insufficient to rebut the presumption set out by *Zadvydas*). For that to be the case, he must prove removal is "a remote possibility," *id.*, resulting from some "insurmountable obstacle," as opposed to removal efforts being "temporarily impeded by bureaucratic delays, setbacks, [or] ongoing negotiations with foreign governments." *Chen v. Banieke*, No. 15-2188 (DSD/BRT), 2015 WL 4919889 at \*4 (D. Minn. Aug. 11, 2015) (alteration supplied). "[A]dministrative delay" is partly why there is a presumptively reasonable period. *See Jeylani*, 2026 WL 1425048 at \*2-3; *cf. Zadvydas*, 533 U.S. at 701 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time.").

During the presumptively reasonable period, the Executive Branch is given some latitude to carry out the removal order to a third country. If the government fails to do so or circumstances change, Mr. Cerdan Guerrero may prosecute an action for a writ of habeas corpus at that time. But until then, the Court finds that Mr. Cerdan Guerrero has not rebutted the presumption and failed to establish that his removal from the country is no longer reasonably foreseeable. Accordingly, his current detention does not violate § 1231(a)(6) as interpreted by *Zadvydas*.

### C. 8 C.F.R. § 241.1

Lastly, Mr. Cerdan Guerrero claims that his detention violates 8 C.F.R. § 241.4 because, as he argues, he was not given an initial custody review and consideration for supervised release. He argues, it would be apparent that he is a candidate for release had the factors set out in subsections (e) and (f) been properly weighed. Dkt. 1 at ¶ 52.

The regulation establishes which noncitizens detained beyond the removal period are eligible for conditional release, as well as the criteria and factors for consideration when DHS determines whether to release a noncitizen to supervision. *See* 8 C.F.R. §§ 241.4(b), (e), (f). The regulation implements procedures for DHS to exercise its grant of discretionary authority under § 1231(a)(6), which permits (but does not require) DHS to detain noncitizens beyond the removal period.

It is true that § 1231(a)(6) gives significant discretion to detain a noncitizen beyond the removal period. But agencies, such as DHS, must nevertheless follow their own regulations, even those governing the agency's exercise of discretion. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Zelaya Diaz v. Rosen*, 986 F.3d 687, 692 (7th Cir. 2021) ("*Accardi* and its progeny teach generally that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion."); *Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules

promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.").

Section 241.4 require DHS personnel to "conduct [an] initial custody review," after the noncitizen has been given "written notice . . . approximately 30 days in advance . . . so that the alien may submit information in writing in support of his or her release." 8 C.F.R. § 241.4(h)(1)-(3). DHS personnel are required to consider, but are not limited to, "the factors described in paragraph (f)." *Id.*

As for timing, the regulation requires the review to occur "prior to the expiration of the removal period." *Id.* However, "for an alien arrested after the removal period like [Mr. Cerdan Guerrero], it would be faithful to the language of § 241.4 to interpret the regulation as requiring notice promptly after arrest and a custody review approximately 30 days later." *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 651 (D. Mass. 2018) (alteration supplied) (finding the regulation permitted an initial custody review when a noncitizen is detained after the removal period because the regulation "permit[ted] ICE to issue the 30–day notice and conduct the custody review 'as soon as possible [ ]after' the removal period, 'allowing for any unforeseen circumstances or [an] emergent situation.'" (alterations in original) (quoting § 241.4(k)(2)(iv)).

The Respondents do not address Mr. Cerdan Guerrero's claim that he was not given an appropriate review for conditional release under § 241.4. Their return is completely silent on this point. Because of Respondents' failure to address the claim in their answer, the Court is inclined to grant Mr. Cerdan Guerrero relief. However, because of the ambiguity in the petition, the Court declines to grant immediate release at this juncture. The petition alleges that the substantive factors in the regulation were "not considered," but then states that they were not "properly weighed," implying that Mr. Cerdan Guerrero was given a review that did not meet the standards in the

regulation. The Court thus finds conditional relief appropriate so that Respondents have an opportunity to demonstrate whether they complied with the regulation.

### III.     Conclusion

The petition is **CONDITIONALLY GRANTED**. *Cf. Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release."). The Respondents are **ORDERED** to file documentation **on or before 12:00 p.m. on August 11, 2026**, demonstrating that Mr. Cerdan Guerrero received an initial custody review as provided under 8 C.F.R. § 241.4. Alternatively, the Respondents may release Mr. Cerdan Guerrero from detention under reasonable conditions of supervision.

The Court **DEFERS** final resolution of the petition until after the Respondents have had an opportunity to file documentation demonstrating that Mr. Cerdan Guerrero received an initial custody review.

**IT IS SO ORDERED.**

Dated:  August 7, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

11

Distribution:

Nora Unverzagt Galindo
Law Office of Nora Galindo
nora@noragalindolaw.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov